UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMIE ELWARD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TEMPUR SEALY INTERNATIONAL INC,<br><br>　　　　Defendant. | CASE NO. 3:22-cv-05645-BHS<br><br>ORDER |

THIS MATTER is before the Court on Defendant Tempur Sealy International's (Sealy's) motions for summary judgment, Dkt. 23, and sanctions, Dkt. 35, and on Plaintiff Jamie Elward's motions for partial summary judgment, Dkt. 27, and for leave to file a surreply to Sealy's sanctions motion, Dkt. 46. The latter is **GRANTED** and the Court has considered the surreply attached to her motion, Dkt. 46 at 5–8.

## I. BACKGROUND

Elward was an employee at Sealy's Lacey, Washington, mattress factory for 17 months, until she voluntarily terminated her employment in February 2022. From September 20, 2021, until November 19, 2021, her immediate supervisor was Alfredo

ORDER - 1

Perez. Elward contends that on November 15, 17, and 18, Perez sexually harassed her. On Tuesday, November 15, Perez caressed Elward's forearm, and later told her he "wanted to make love" to her. Elward Deposition, Dkt. 26-3 at 18–19. Perez apologized the next day. But on Wednesday, November 17, Perez told Elward what he said on Monday was true, and later that day that Perez spread his arms demonstrating what he wanted Elward to do with her legs on an upcoming work trip. *Id*. at 22.

Elward did not report Perez's harassment to anyone at Sealy. Instead, to avoid a "he said/she said" situation, after the Monday incident, Elward chose to record her conversations with Perez so she would have proof of his harassment. She did so, using an application she installed on her phone for that purpose. Elward contends that she first tried to record Perez on November 17 but, because her phone was in her back pocket, the recording was not clear. She contends she recorded Perez telling her he "wanted to come inside" her on that day. Dkt. 26-3 at 23. She did not report that harassment, either, and instead sought to obtain a better recording.

On Thursday, November 18, Elward put her phone in her shirt to get a better recording. Elward's initial conversations with Perez that day did not include any harassment, and Elward contends that Perez apologized again for his prior comments. She alleges she told Perez that, if he stopped, she would not "go upstairs" and report his conduct to Sealy. *Id*. at 28. But 20 minutes after the November 18 recording, Elward contends Perez again brought up the work trip and asked her whether she would "lower her standards" if he "gave her enough shots." *Id*. at 26.

ORDER - 2

1    The following morning, Friday, November 19, 2021, Elward reported Perez's
2 harassment to Shannon Holliday of Sealy's Human Resources Department. *Id*. at 30.
3 Holliday immediately began an investigation, interviewing Elward's co-workers Greg
4 Johnson and Mario Arenello-Zanabria. Holliday Deposition, Dkt. 26-10 at 15. Holliday
5 did not listen to Elward's recordings because they were obtained in violation of Sealy's
6 policy (disclosed in Sealy's Employee handbook, which also included Sealy's Sexual
7 Harassment Policy requiring prompt notification of unlawful workplace harassment).
8 Holliday also believed the recordings violated Washington law. *Id*. at 7.
9    Holliday sent Elward home for the day, with pay, and ensured that she would not
10 encounter Perez by having someone else summon him to a meeting. Perez also left work
11 early on Friday, November 19, telling a co-worker that he "said some things to Jamie
12 [Elward] that he thinks may have been taken out of context and he thinks he may be in
13 trouble." Johnson Deposition, Dkt. 26-6 at 4.
14   Holliday called Perez about returning for an interview in light of Elward's
15 complaint, but Perez did not answer. In response to a voice mail, Perez told Sealy that he
16 was already in Tacoma (25 miles north) but would return for an interview early Monday
17 morning. Coley Deposition, Dkt. 26-2 at 6. Instead, Perez gave his two-week notice on
18 Sunday, and asked if he could use his accrued vacation time rather than come back to
19 work. *Id*. at 10–11. Sealy accepted his resignation and Perez never returned. Perez is on
20 Sealy's "no re-hire list." Sealy repeatedly, affirmatively asserts that after its investigation,
21 including interviews with Elward's and Perez's co-workers, it "intended to fire Perez" on
22

Monday, November 22, 2021. Dkt. 23 at 14, and Dkt. 47 at 14 n.6 (citing Coatney Deposition, Dkt. 26-1).

Elward continued to work at Sealy until February 15, 2022, when she resigned after accepting a higher paying job at Home Depot. Dkt. 26-9. She sued in August 2022, asserting claims under Washington's Law Against Discrimination (WLAD), RCW chapter 49.60. She also asserted that Sealy violated United States Equal Opportunity Commission (EEOC) regulations. Dkt. 1-2. Sealy removed the case here, Dkt. 1, and Elward filed an amended complaint in December 2022. Dkt. 13. Elward's amended complaint asserts WLAD and EEOC claims, alleges that Sealy is strictly liable for failing to protect her, and contends that Sealy "failed to do a subsequent, prompt, impartial and comprehensive investigation of at least [her] complaints about sexual harassment." *Id*. at 9–10.

Sealy now seeks summary judgment on Elward's claims. It argues that Elward received, read, and acknowledged Sealy's No Harassment Policy at the start of (and as a condition of) her employment, and that that policy required her to promptly report any sort of workplace harassment. It points out that Elward attended Sexual Harassment Prevention Training in April 2021, which reiterated Sealy's prompt reporting policy. Dkt. 23 at 4. Sealy argues that Elward has "no evidence of actionable harassment"[1] but that even if she did, Sealy is not liable because she failed to promptly report it. *Id*. at 16.

---

[1] This and other phrasing in Sealy's filings (consistent references to the "alleged" harassment) suggest there is a factual issue about whether Perez in fact sexually harassed Elward. At the same time, Sealy affirmatively asserts that it intended to fire Perez on Monday, November 22. Dkt. 47 at 14 n.6. This would make no sense if Sealy's investigation did not

Sealy correctly contends that there are generally two viable sexual harassment theories under Washington law, and Elward asserts both. The first is quid pro quo harassment, which requires at least an "attempted extortion of sexual favors for a job benefit." *Id*. at 17 (citing *DeWater v. State*, 130 Wn.2d 128, 135 (1996)). Sealy argues that Elward has no evidence that Perez ever offered her job benefits in exchange for sexual favors. *Id*.

The second, more common form of sexual harassment is hostile work environment. Sealy correctly asserts that such a claim requires Elward to establish a prima facie case that there was (1) offensive, unwelcome contact that (2) occurred because of sex or gender, (3) affected the terms or conditions of employment, and (4) can be imputed to the employer. *Id*. at 17 (citing *Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 161 (2000) (*citing Doe v. Dep't of Transp.,* 85 Wn. App. 143, 148 (1997))). Sealy concedes the first two elements of such a claim for purposes of its own summary judgment motion, Dkt. 23 at 18, though it contends in response to Elward's motion that she cannot prove Perez's conduct was "unwelcome" or that it was "because of" her sex.[2] Dkt. 47 at 6–9. Sealy argues that Elward cannot demonstrate that Perez's harassment was

---

support Elward's accusations about Perez's conduct. The Court presumes that Sealy concedes that Perez's harassment occurred, but instead asserts there is no evidence supporting Elward's claim that Sealy is liable for it.

[2] The Court does not agree that there is any factual question about whether Perez's vulgar comments to Elward were motivated by something other than what he explicitly and graphically stated: he wanted to have sex with her. Sealy's apparent argument that he did so for some unarticulated reason other than sex is not plausible or persuasive. *See* Dkt. 47 at 8–9.

pervasive enough to alter the conditions of her employment, and that she cannot establish that his conduct was imputable to Sealy. Dkt. 23 at 18.

Sealy's better argument is that Perez's conduct is not imputable to Sealy because Elward suffered no tangible employment action, and because Sealy took reasonable care to maintain and enforce clear harassment prevention policies and procedures, and Elward unreasonably failed to follow that policy. Dkt. 23 at 20 (citing *Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) (together "*Faragher/Ellerth*")). These cases involve a federal law, Title VII, but Washington courts have consistently followed federal precedent in employment cases, and WLAD "substantially parallels" Title VII. *Arthur v. Whitman Cty.*, 24 F. Supp. 3d 1024, 1033 (E.D. Wash. 2014). Elward responds that the Washington Supreme Court has declined to adopt *Faragher/Ellerth* and that that federal defense is inconsistent with WLAD. Dkt. 50 at 21.

Elward's cross motion seeks partial summary judgment on Sealy's liability for Perez's conduct. She contends that Perez "groomed her" for nine weeks before he overtly sexually harassed her the week of November 15, 2021, and that Perez's "relentless" campaign of sexual harassment created a hostile work environment under WLAD as a matter of law. Dkt. 27 at 13–19. She argues that, under the totality of the circumstances, Perez's conduct was pervasive enough to alter the conditions of her employment. *Id*. at 14 (citing *Adams v. Able Bldg. Supply, Inc.*, 57 P.3d 280, 283 (2002)). Elward specifically contends that Perez's conduct is imputed to Sealy because he was her

manager and had sufficient work authority over her to control the number of hours she worked, and thus her pay, because she was an hourly employee. *Id*. at 17.

Elward alternatively contends that she is entitled to summary judgment on Sealy's liability for quid pro quo sexual harassment, because Perez offered to take her on a supervisors' business trip if she would have sex with him on that trip. Dkt. 27 at 20.

Elward's motion (and her response to Sealy's) relies in part on the recordings she made of her conversations with Perez on November 17 and 18. Dkt. 27 at 6–9. Sealy contends and appears to demonstrate that Elward did not timely disclose that she replaced her cell phone and deleted the app she used to make the recordings. It also contends that Elward's accounting for the recordings she offers in support of her version of the facts was not accurate: despite Elward's (and counsel's) representations, some recordings were altered or edited, and others were deleted. Sealy has since "retracted" its claim that Elward also deleted two text messages from her phone. Dkt. 43 at 4. Nevertheless, Sealy asks the Court to sanction Elward for her discovery abuses, by dismissing her claims or forcing her to pay its fees. Elward's surreply asserts that Sealy's forensic discovery provider (ArcherHall) has since located the allegedly "missing" texts, after properly searching her phone. Dkt. 46 at 6. She asks the Court to deny Sealy's motion for sanctions.

The issues are addressed in turn.

## II. DISCUSSION

**A.      Summary judgment standard.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

B.  **Cross Motions for Summary Judgment.**

 1.  **Elward's Quid Pro Quo WLAD claim.**

Elward argues that she has established her quid pro quo WLAD claim as a matter of law. Such a claim requires at least an "attempted extortion of sexual favors for a job benefit." *DeWater*, 130 Wn.2d at 135.

Elward claims that Perez implicitly offered to take her to an out-of-town supervisor's conference if she would have sex with him on the trip. Indeed, she argues that Perez made it clear that her path to promotion was through him, and she characterizes his "grooming" as "when I get you to this supervisor's conference, you'll be having sex with me in the hotel room we share." Dkt. 27 at 20 (citing Elward's deposition Dkt. 30-1 at 64–65). Elward contends that Perez made "quid pro quo demands for sex in exchange for promotional opportunity." Dkt. 50 at 5. But Sealy correctly argues that, even viewed in the light most favorable to her, the undisputed facts surrounding the exchange—based on Elward's own deposition testimony—do not support the characterization of the story in her motion or her response to Sealy's motion.

In her deposition, Elward testified that Perez said, "Hey but that trip, are you still willing to go on it if you're able to go, like if they say yeah." Dkt. 30-1 at 76 (Elward deposition, page 195, lines 21–23). Elward testified she said, "You have to understand I have standards. And I basically told him no. I said no. Like I have standards and I'm just not going to do that." Elward testified that Perez said, "[I]f I give you enough shots will you lower your standards?" *Id*. at 77 (Elward deposition, page 196, lines 1–4). In response, Elward testified she said "huh" and walked off. Perez talked to Elward as she

was walking away, saying, "I'm just kidding, I'm just kidding." And Elward said, "Yep, I know." *Id*. at lines 13–16.

This does not support Elward's claim that Perez attempted to extort sexual favors in exchange for a job or a job benefit. Furthermore, as Sealy points out, Perez did not have the authority to promote (or fire) Elward or anyone else. Elward knew that it was up to Perez's boss, Sean Coatney, not Perez, whether she could even attend the supervisor's work trip. Dkt. 47 at 20 (citing Coatney Declaration, Dkt. 25 at 5). Perez and Elward asked Coatney if she could attend, and he told each of them she could not. *Id*. And the allegedly advantageous treatment Elward claims Perez gave her as part of his "grooming" effort occurred weeks or months prior to the alleged quid pro quo exchange, described above.

Sealy contends Elward has no evidence supporting a quid pro quo WLAD claim, and that she has failed to cite any authority supporting one on these facts. The Court agrees. Even viewed in the light most favorable to Elward, the evidence does not support the conclusion that Perez sought sexual consideration in exchange for a job or a job benefit. *DeWater*, 130 Wn.2d at 135.

Elward's summary judgment motion on her quid pro quo WLAD claim is **DENIED**. Sealy's summary judgment motion on that claim is **GRANTED** and Elward's quid pro quo WLAD claim is **DISMISSED with prejudice**.

**2.     Elward's Hostile Work Environment WLAD claim.**

Elward's summary judgment motion on her hostile work environment WLAD claim asserts that she has established all four elements of a hostile work environment

WLAD claim as a matter of law. Those elements are: (1) offensive, unwelcome contact that (2) occurred because of sex or gender, (3) affected the terms or conditions of employment, and (4) can be imputed to the employer. *Glasgow v. Georgia Pacific Corp.*, 103 Wn.2d 401, 406–407 (1985); *see also Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 161 (2000) (*citing Doe v. Dep't of Transp.,* 85 Wn. App. 143, 148 (1997)). Sealy's summary judgment motion contends that Elward cannot establish elements 3 or 4 as a matter of law. It also argues that it is entitled to the *Faragher/Ellerth* defense, which applies to defeat a hostile work environment claim when the defendant can demonstrate that the plaintiff suffered no tangible employment action, and the defendant employer maintained a clear harassment prevention policy that the plaintiff unreasonably failed to use. Dkt. 23 at 20.

Elward contends that *Faragher/Ellerth* is inconsistent with WLAD and that it does not apply to WLAD hostile work environment claims. She also argues[3] that it does not apply to the facts of this case, viewed in the light most favorable to her. Dkt. 50.

The Washington Supreme Court articulated the four elements of hostile work environment claim in 1985. *Glasgow*, 103 Wn.2d at 406–407. It did so with specific reference to the elements of a Title VII claim under federal law. *Id.*; *see also Sangster,* 99 Wn. App. at 679 ("The *Glasgow* formulation of the elements of sexual harassment is taken from Title VII.") (citing *Glasgow* at 406–407).

---

[3] Elward argues that, because a WLAD defendant's trial brief cited *Sangster* in a case that reached the Washington Supreme Court, and that court did not address it, the Supreme Court has elected not to adopt *Faragher/Ellerth*. Dkt. 50 at 21 (citing *Robel v. Roundup Corp.*, 103 Wn. App 75 (2000), *aff'd in part and rev'd in part*, 148 Wn.2d 35 (2002)). This is too tenuous.

The United States Supreme Court decided *Faragher* and *Ellerth* in 1998, recognizing an affirmative defense to a hostile work environment claim under Title VII, 42 U.S.C. § 2000e *et seq*. It did so in part to encourage employers to implement harassment prevention policies and procedures. *Ellerth*, 524 U.S. at 764. The defense applies where the defendant can establish that the plaintiff employee suffered no tangible employment action, and the defendant employer maintained a clear harassment prevention policy that the plaintiff unreasonably failed to use. *Id*. at 765.

Two years later, Division III of the Washington Court of Appeals held that the *Faragher/Ellerth* defense should, and did, apply to WLAD claims, and that doing so was not precluded by *Glasgow*:

> In adopting an affirmative defense limiting employer liability, the [*Ellerth*] court stated it was consistent with "Title VII's purpose to the extent it would encourage the creation and use of anti-harassment policies and grievance procedures." *Burlington*, 118 S. Ct. at 2261. *Glasgow* does not discuss the effect of failure to use an anti-sexual harassment complaint procedure. Furthermore, in describing the four elements of sexual harassment, the court stated what "an employee must prove." *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 406, 963 P.2d 708 (1985). It did not attempt to articulate defenses which may have been available to the employer. We conclude *Glasgow* is not controlling.

*Sangster,* 99 Wn. App. at 166–167.

In 2004, Division I of the Washington Court of Appeals recognized that the Washington Supreme Court had not adopted *Ellerth*, and expressed reluctance to follow *Sangster*, even though it acknowledged that it "seems likely that our Supreme Court will adopt and follow" the new federal precedent. *Barker v. W.A. Botting Co.*, 121 Wn. App. 1030, 2004 WL 938553, at *5 (Wash. App. Div. 1, 2004) (unpublished).

ORDER - 12

1    Washington Courts have consistently looked to parallel federal opinions
2 construing Title VII (and the Americans with Disabilities Act) in deciding WLAD cases.
3 The case upon which Elward relies, *Glasgow*, did so. 103 Wn. 2d at 406–407; *see also*
4 *Sangster*, 99 Wash. App. at 164; *Arthur v. Whitman Cty.*, 24 F.Supp.3d 1024, 1033 (E.D.
5 Wash. 2014) ("The WLAD substantially parallels Title VII." (internal quotation marks
6 omitted)). Elward cites no case suggesting that Title VII law is inconsistent with WLAD,
7 that the two statutory schemes have different purposes, or that federal Title VII authority
8 is not persuasive in WLAD cases.

9    It is this Court's role to predict what the Washington Supreme Court would do,
10 and if there is no evidence of how it would rule, it is bound by the Court of Appeals. In
11 interpreting state law, federal courts are bound by decisions of the state's highest court.
12 "In the absence of such a decision, a federal court must predict how the highest state
13 court would decide the issue using intermediate appellate court decisions, decisions from
14 other jurisdictions, statutes, treatises, and restatements as guidance. "*Arizona Elec. Power*
15 *Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir.1995) (quoting *In re Kirkland,* 915
16 F.2d 1236, 1239 (9th Cir.1990)). However, where there is no convincing evidence that
17 the state supreme court would decide differently, "a federal court is obligated to follow
18 the decisions of the state's intermediate appellate courts." *Kirkland,* 915 F.2d at 1239.

19    For the reasons articulated in *Sangster*, and because it is bound by *Sangster* in any
20 event, the Court concludes that the *Faragher/Ellerth* affirmative defense is available in a
21 WLAD case, and it is consistent the goals of that statute. Sealy's affirmative defense is
22

not precluded because it has not been expressly adopted by the Washington Supreme Court.

*Faragher* explained how the defense applies:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *When no tangible employment action* is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence[.] The defense comprises two necessary elements: (a) that the employer exercised *reasonable care to prevent and correct promptly any sexually harassing behavior*, and (b) that the plaintiff employee *unreasonably failed to take advantage of any preventive or corrective opportunities* provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807 (emphasis added).

Elward argues that Sealy cannot prevail on the defense in this case because she suffered a "tangible employment action," specifically, she was offered a promotion in exchange for sexual favors. Dkt. 50 at 26. She correctly asserts that "a tangible employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 25 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (*citing Ellerth*, 524 U.S. at 762)). Elward argues that Perez "leveraged a promotion in exchange for sex" and when she refused, she did not get the promotion. Dkt. 50 at 26. But it is undisputed that Perez did not have the ability to offer or deny Elward a promotion, and his failure to give her one when she refused to agree to have sex with him on the upcoming supervisor's trip is not a "tangible employment action," as a matter of law.

1    Elward also argues that Sealy "failed to act reasonably to prevent and correct
2    Perez's sexual harassment as a matter of law—thus precluding Defendant avoiding
3    liability through the *Faragher-Ellerth* defense." Dkt. 50 at 27. This claim is based not on
4    Sealy's response to Elward's report about Perez, but on its response to a prior complaint
5    about Perez, by a different employee, in March 2021. That employee complained to Sealy
6    that Perez routinely called her "Baby." More egregiously, the employee reported when
7    she asked to come to work early, Perez responded, "if you want to come in at 6 am, you
8    need to give me 4 hours on Sunday and you need to spread your legs." Dkt. 50 at 28
9    (citing Dkt. 30-4 at 18). Elward asserts that Sealy did "nothing" to correct this sexual
10   harassment, did not investigate it, and "utterly failed to take any legitimate any remedial
11   action." *Id*. at 28–29.

12   This is not an accurate characterization of the record. Sealy demonstrates that, in
13   response to the March 2021 complaint, it spent two and a half weeks investigating,
14   interviewing 13 witnesses, and reviewing video surveillance. Dkt. 47 at 24 (citing
15   Coatney Declaration, Dkt. 25, and Dkts. 25-4, -5, and -6). At the end of Sealy's
16   investigation, it issued Perez a "final written warning," and Coatney monitored Perez's
17   conduct to such an extent that Perez complained to Coatney's boss. *Id*.

18   The *Faragher-Ellerth* defense requires an employer defendant to establish that it
19   exercised reasonable care to prevent and correct promptly any sexually harassing
20   behavior. Elward does not describe any failings in Sealy's treatment of the March 2021
21   complaint about Perez, or explain why giving him a final written warning and monitoring
22   his conduct was not a reasonable response to the report about what he said. Her complaint

that they did "nothing" is contrary to the record. Sealy has established that its response to that complaint was reasonable, and Elward's conclusory complaints about it are not enough to create a question of fact about it.

Elward also complains about Sealy's investigation into her own sexual harassment report. She asserts that Sealy failed to listen to her recordings and failed to view the surveillance videos. This argument would be more persuasive if Sealy had denied that the harassment took place, or refused to act on it, but it did not. Again, it has consistently claimed it intended to fire Perez when he returned the following Monday—a result that Elward had already acknowledged she knew was likely, that she told Holliday she wanted, and that, given his history, Perez apparently realized was a foregone conclusion. When he learned Elward had "gone upstairs," Perez left work and never returned. Elward's complaints about Sealy's investigation into her claims are not persuasive , or effective.

Elward complains that an employer acts unreasonably when it failed to enforce its sexual harassment policy. Dkt. 50 at 19 (citing *Faragher*). But there is no evidence supporting her contention that Sealy failed to enforce its policy or the anti harassment procedures in it. It is instead the reasonableness of Elward's failure to utilize that those procedures that is at issue.

Finally, Elward argues that a jury could find that her failure to follow Sealy's No Harassment Policy was reasonable. She asserts that did not report Perez's conduct to Sealy because she wanted to avoid a "he said she said" situation, and she was afraid Sealy would not believe her. But it cannot be the case that an employee is free to simply

ignore the Policy she agreed to follow based on such generalized concerns. Elward has identified no reasonable basis for ignoring the No Harassment Policy's procedures, which included immediate reporting of sexual harassment. She has identified no basis for her concern that Sealy would not believe her, or for fearing that it would not respond as outlined in the Policy. Elward has not directly addressed the impact of her failure to utilize Sealy's No Harassment Policy. Nor has she addressed that the Policy prohibits the sort of recording she chose to make instead.

There is no evidence supporting a factual finding that Elward's election to ignore Sealy's policy of prompt reporting was reasonable, or that her decision to record Perez in violation of that policy was reasonable. She unreasonably failed to avail herself of procedures she knew about, as a matter of law.

Sealy established that Elward suffered no tangible employment action, that it had and enforced a reasonable No Harassment Policy, and that Elward unreasonably failed to take advantage of it, as matter of law. Elward's motion for partial summary judgment on her hostile work environment claim is **DENIED**. Sealy's motion for summary judgment on that claim is **GRANTED**, and it is **DISMISSED with prejudice**.

C.  **Sealy's Motion for Sanctions.**

Sealy's motion for sanctions, Dkt. 35, is not without merit. There were irregularities surrounding Elward's disclosure of the recordings, how and when she made them, and whether and how she edited them.

The Court is not convinced, however, that Elward's alterations—whether they were an attempt to shade the evidence in her favor, a misguided effort to keep only what

she thought were the pertinent passages, or simply a mistake—had a material effect on the case. Elward testified that Perez harassed her, Sealy knew he had a prior similar incident, and there is no evidence and no real claim that he did not harass Elward.[4] Perez's conduct after November 17 is powerful evidence that he knew he had done something that was going to cost him his job. And again, Sealy's witnesses testified and its defense in this case depends in part on its argument that he was correct: based on its investigation (which did not include listening to the recordings), it planned to fire Perez when he returned to Sealy on Monday November 22, 2021.

Elward's discovery failings relate to her claim that Perez sexually harassed her, which is not the lynchpin of this case. The case is instead about whether Sealy is liable for Perez's conduct, and the answer to that question does not turn on any version of the recordings. Sealy was therefore not prejudiced by Elward's discovery failings. Its motion for sanctions is **DENIED**.

The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

Dated this 21st day of November, 2023.

BENJAMIN H. SETTLE
United States District Judge

---

[4] Sealy does assert that the full recordings might inform whether Perez's comments were in fact "unwelcome." Dkt. 35 at 13. But Elward's characterization of Sealy's defense as "she asked for it," Dkt. 39 at 8, is inaccurate and unfair. Seely's defense is that she was aware of its No Harassment policies and procedures and unreasonably failed to follow them.